UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OVATION FINANCE HOLDINGS 2 LLC, et al.<br><br>                               Plaintiffs,<br><br>v.<br><br>CHICAGO TITLE COMPANY, et al.<br><br>                              Defendants. | Case No.:   19cv2031-LAB (AHG)<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS; AND**<br><br>**ORDER GRANTING LEAVE TO AMEND PENDING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>**[DOCKET NUMBER 24.]** |

Plaintiffs were numerous investors in a lending enterprise which the Complaint calls the ANI Loan Program. This case is related to 19cv1628, *SEC v. Champion-Cain*, and to 19cv2129, *Allred v. Chicago Title*. All three cases concern the same lending enterprise. Cris Torres and Gina Champion-Cain have pled guilty in the criminal cases 20cr2114 and 20cr2115, respectively.

Defendant Chicago Title filed a motion to dismiss, or in the alternative to stay this action. (Docket no. 24.) Chicago Title argues that Plaintiffs have failed to join necessary parties, that Plaintiffs' RICO claims are barred under the Private Securities Litigation Reform Act (PSLRA), and that the Complaint does not state a

claim against Defendant Chicago Title Insurance Company. This motion is fully briefed and ready for adjudication. Plaintiffs also filed a motion (Docket no. 33) seeking leave to add two new claims, but that motion does not affect the motion to dismiss. The hearing date on that motion is November 23, so briefing on that motion is not due soon.

Although the Court is deciding similar motions in *Allred*, the two complaints are different, and the Court is treating each case separately. In particular, the Complaint in this case is much more robust, and supported by substantial exhibits. The motions to dismiss are different as well. For example, Defendants in *Allred* moved to dismiss fraud claims for failure to plead them with particularity, but the motion to dismiss in this case does not raise such an argument. The fact that the Court has made a particular ruling in a related case does not necessarily mean the same ruling will be made in all cases.

**Dismissal for Failure to Join a Necessary Party**

Under Fed. R. Civ. P. 19(a)(1), a party must be joined when either of two conditions is met. Under Rule 19(a)(1)(A), a person is a necessary party if, "in that person's absence, the court cannot accord complete relief among existing parties . . . ." Under Rule 19(a)(1)(B), a person is a necessary party if he claims an interest relating to the action and if adjudicating the action in that person's absence may lead to either of two scenarios: either adjudication may as a practical matter impair the absent person's ability to protect his interest, or the person's absence may result in an existing party's incurring multiple or inconsistent obligations. If a necessary party has not been joined as required, the Court must order that that person be made a party. *See* Rule 19(a)(2). But if joinder is not feasible, the Court must determine whether the action should proceed among the existing parties or be dismissed. *See Washington v. Daley*, 173 F.3d 1158, 1169 (9th Cir. 1999); Rule 19(b).

/ / /

"It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (per curiam); *see also* Fed. R. Civ. P. 19 advisory committee's note to 1966 amend. (explaining that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability").

Motions to dismiss for failure to join a necessary party are bought under Fed. R. Civ. P. 12(b)(7).  The moving party bears the burden of persuasion. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990). The movant must first show that the party is necessary. If so, the Court must determine whether the absent person is indispensable, such that in "equity and good conscience" the suit should be dismissed. *Id.* "The inquiry is a practical one and fact specific . . . ." *Id.* In ruling on the motion, the Court accepts as true the allegations in the complaint, drawing all reasonable inferences in Plaintiffs' favor. *See Paiute-Shoshone Indians of Bishop Community of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011).

Chicago Title argues that Champion-Cain as well as ANI Development, LLC and American National Investments, Inc. (collectively, "ANI") are necessary parties who cannot be joined because of the litigation bar in the SEC action, 19cv1628, *SEC v. Champion-Cain*. Developments in that action have affected the Court's analysis of this issue. After the motion to dismiss was filed, the receiver in the SEC action sought Court approval to bring claims against Chicago Title. The Court has held a hearing but has not yet authorized the receiver to bring that action. The proposed action may involve the receiver asserting claims on behalf of ANI. If that were to happen, and if both actions were to go forward at once, Chicago Title would be at risk of conflicting judgments.

Chicago Title also argues that Kim Peterson and Kim Funding are necessary parties, but cannot be joined because both are in bankruptcy. It argues that Kim Peterson and Kim Funding are necessary because they participated substantially

in inducing Plaintiffs to invest. Champion-Cain is an alleged tortfeasor along with Chicago Title. Whether Kim Peterson and Kim Funding are at fault is not clearly alleged, though the Complaint does make clear they were substantially involved in dealing with investors and drafting agreements. The Complaint suggests in passing that Kim Peterson, an investor, was duped by Champion-Cain. (*See* Compl., ¶¶ 96–97.)

Most of the Complaint's allegations describe Kim Funding's financial and other business arrangements with Ovation and Banc of California in facilitating their investment in the lending platform, rather than their involvement with the scheme more generally. The Complaint does not treat either Kim Peterson or Kim Funding as deeply and knowingly involved in any deception.

As to Kim Peterson and Kim Funding, the Court finds Chicago Title has not met its burden of showing they are necessary parties. While Champion-Cain is a joint tortfeasor, it does not appear her involvement in this action is necessary either. It appears, however, that ANI will be a necessary party if the receiver's motion for authorization to proceed against Chicago Title is granted. As discussed at the hearing on the receiver's motion, the Court was considering staying actions against Chicago Title, in order to facilitate an orderly disposition of the receiver's actions. Bearing in mind that this case is still in the pleading stage, and that the Court has yet to rule on the receiver's motion, the Court finds it unnecessary to stay the case at this time.

It is likely the Court will rule on the receiver's motion in case 19cv1628 well before ruling on Plaintiffs' pending motion for leave to amend. Once that happens, the appropriateness of a stay for failure to join ANI will be clearer. Because this case is still in the pleading stage and is likely to remain so for some time, a stay is unnecessary at this time.

/ / /

/ / /

**Dismissal for Failure to State a Claim**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. Id. at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of misconduct"; they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. Cedars-Sinai Medical Center v. National League of Postmasters of U.S., 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). The Court does not weigh evidence or make credibility determinations. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013). The Court, however, is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

To meet the ordinary pleading standard and avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

New allegations in opposition to a Rule 12(b)(6) motion to dismiss may be considered when deciding whether to grant leave to amend, but are not considered when ruling on the motion itself. *See Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

/ / /

**Dismissal of RICO Claims**

Plaintiffs bring two Racketeer Influenced and Corrupt Organizations Act (RICO) claims under 18 U.S.C. § 1962(c) and (d), respectively. In 1995, Congress enacted the Private Securities Litigation Reform Act (PSLRA), which amended the RICO statute to provide that securities fraud cannot serve as a predicate act for a RICO claim. *See* 18 U.S.C. § 1964(c) ("[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.") Congress' focus was on eliminating treble damages for securities fraud claims, which it reasoned existing securities laws already provided an adequate remedy for. *See Bald Eagle Area Sch. Dist. v. Keystone Fin'l Inc.*, 189 F.3d 321, 327 (3d Cir. 1999); *MJK Partners, LLC v. Husman*, 877 F. Supp. 2d 596, 603 (N.D. Ill. 2012). In other words, the PSLRA does not immunize securities fraud, but merely prevents a plaintiff from using RICO to sue for such activities.

The bar applies even if the plaintiff would lack standing to sue under federal securities law. *Howard v. America Online, Inc.*, 208 F.3d 741, 749–50 (9th Cir. 2000). This is consistent with Congress' purpose in enacting the PSLRA. If existing securities law, which Congress thought was adequate, does not provide a particular remedy to a particular plaintiff, the logical implication is that Congress did not intend to grant a remedy in those circumstances. Allowing plaintiffs to use RICO as an end run around limitations on claims under existing securities laws would defeat the PSLRA's purpose.

The PSLRA bar proscribes the use as a RICO predicate of any conduct that would have been actionable as securities fraud, even if pled as some other claim, such as wire fraud or mail fraud. *See Swartz v. KPMG, LLC*, 401 F. Supp. 2d 1146, 1151 (W.D. Wash. 2004), *aff'd in relevant part*, 476 F.3d 756, 761 (9th Cir. 2007). *See also Bald Eagle*, 189 F.3d at 327. A plaintiff cannot avoid the PSLRA bar by relying on only some parts of an overall scheme as RICO predicate acts,

and avoiding those parts connected with the sale or purchase of securities. *See id.*, 189 F.3d at 330. *See also Davies v. GetFugu, Inc.*, 2010 WL 11597458, at *3 (C.D. Cal., Aug. 26, 2010) (citation omitted) (explaining that when determining whether PSLRA bar applies, courts consider the allegedly fraudulent scheme as a whole).

Plaintiffs briefly argue that Banc of California's and Ovation's lines of credit, which were intended to finance the ANI Loan Program, did not involve the purchase or sale of a security. Alternatively, they argue that the Court cannot decide this issue as a matter of law at the pleading stage.

At the pleading stage, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). The Court does not weigh evidence or make credibility determinations. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013).

In general, when determining what amounts to a security for purposes of federal securities laws, "form should be disregarded for substance and the emphasis should be on [the] economic reality . . . ." *United Housing Found. v. Forman*, 421 U.S. 837, 848 (1975). The Supreme Court has made clear, however, that federal securities laws are intended to be read liberally, recognizing the "virtually limitless scope of human ingenuity" devised by those who seek the investment of third parties. *SEC v. Rubera*, 350 F.3d 1084, 1089 (9th Cir. 2003) (quoting *Reves v. Ernst & Young*, 494 U.S. 56, 60–61 (1990)). The definition of "security" is not restrictive, but "encompass[es] virtually any instrument that might be sold as an investment." *Id.* at 1090 (citing *Reves*, 494 U.S. at 61). Securities include, among other things, investment contracts, which are defined as any "contract, transaction or scheme whereby a person invests his money in a common

/ / /

enterprise and is led to expect profits solely from the efforts of the promoter or third party." *Id.* (*quoting SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946)).

The Complaint alleges that from 2012 to 2019, Defendants defrauded Plaintiffs and other investors by means of the ANI Loan Program. (Compl., ¶¶ 1–2, 19, 22.) Supposedly, Plaintiffs' investment funds would be deposited in escrow accounts with Chicago Title, on behalf of liquor license applicants who could not afford to keep large amounts of money in escrow as long as was typically required. (*Id.,* ¶ 20.) *See* Cal. Bus. & Prof. Code § 24074 (escrow provisions). Champion-Cain purportedly knew and worked with an attorney who could send large numbers of such applicants her way. (Compl., ¶ 21.) After the license application was granted, the licensee-applicant was supposed to wire the funds plus interest to Chicago Title, for deposit into the escrow account, after which the lender's money would be returned with their share of the interest. (*Id.*, ¶ 31.) The arrangement supposedly was designed to minimize risk. (*Id.*, ¶ 23.) This all entailed a great deal of work, which the investors depended on Champion-Cain, Chicago Title, ANI, and others to carry out. Graphics in the Complaint illustrate how the process was supposed to work. (*Id.*, ¶¶ 32.) Plaintiffs also attach exhibits to the Complaint showing among other things agreements they made and relied on.

In fact, the Complaint alleges, none of what was promised actually happened. Instead, Champion-Cain and her confederates took the money and Chicago Title profited from the fees it received. The Complaint includes a graphic illustrating how the scheme actually functioned. (*Id.*, ¶ 91.)

The Complaint's allegations describe the Lending Platform (as it was supposed to have functioned)[1] as a common enterprise. Investors handed their

---

[1] The fact that the Lending Platform was nonexistent does not change the analysis. Whether fraud amounts to securities fraud depends on what a defendant purports to be promoting or selling when it induces its victims to invest. *See SEC v. Lauer*,

money over to Defendants, who would do all the work, including finding a steady stream of licensee-applicants, conducting other necessary transactions and business, and eventually paying the investors. The only part of the process investors were involved in was selecting particular licensee-applicants' accounts to fund, from a list compiled by Defendants. Other than that, their role was passive.

Had the ANI Loan Program functioned as promised, Plaintiffs' return would have depended on the managerial skill and efforts of Chicago Title and others involved with the Loan Program. By investing their money in the Lending Platform, Plaintiffs were placing substantial trust in Defendants and others involved in the program to do the work to exercise their skill in order to minimize any risk and to turn as large a profit as possible. (*See, e.g.*, Compl., ¶¶ 75; 203.)

It is also significant that many investors were invited to take part in the Lending Platform, which required no particular expertise about liquor licenses, escrow agreements, or anything else, nor did it require any effort on their part. Their role, essentially, was to front the money, for which they would reap a return. *See United States v. Farris*, 614 F.2d 634, 641 (9th Cir. 1979) (distinguishing the case from *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) in part on the fact that in *Amfac* the promissory note was offered to one sophisticated investor only).

This brings the ANI Loan Program within the definition of a security. *See Farris*, 614 F.2d at 641 (citing definitions of securities). Because Plaintiffs' two RICO claims are premised on transactions that are actionable as securities fraud, the PSLRA bars them.

///

---

52 F.3d 667, 670 (7th Cir. 1995) ("[I]t is the representations made by the promoters, not their actual conduct, that determine whether an interest is an investment contract (or other security).")

Although Plaintiffs are not necessarily estopped by the Court's decisions in related cases, it bears mention that case 19cv1628 represents the SEC's efforts to bring securities fraud claims against Champion-Cain and others in connection with these same transactions. Torres has pled guilty in case 20cr2114 to conspiracy to commit securities fraud, and Champion-Cain has pled guilty in case 20cr2115 to (among other things) securities fraud and conspiracy to commit securities fraud. To treat the Lending Platform investments as something other than securities would be anomalous.

**Possibility of Amendment**

Plaintiffs' opposition to the motion to dismiss describes Banc of California's and Ovation's lines of credit in different terms than the Complaint does. For example, the Complaint says Ovation's rate of return was to have been 10% (Compl., ¶ 33) and it would remain the owner of the loaned principal. (*Id.*, ¶¶ 34, 40.) It also alleges that Banc of California was to be named as a third-party beneficiary with an ownership interest in the escrowed funds. (*Id.*, ¶¶ 54, 61–62.) The Complaint speaks of the money in the accounts as belonging to the lenders, and of the low risk to lenders' principal. (*Id.*, ¶ 36.) In their opposition, Plaintiffs describe Ovation's and Banc of California's involvement as that of commercial lenders only, though the opposition is silent as to other investors.

While Banc of California and Ovation may have been commercial lenders vis-à-vis Kim Funding, their understanding was that the escrow accounts would be held in their own names, and they would remain owners of the funds in the accounts. They are not suing on the notes,[2] but for alleged securities fraud by which their funds were drained. Their claims against Chicago Title arise from its involvement in the alleged fraud. While these two Plaintiffs may have been

---

[2] Because Kim Funding is in bankruptcy, their ability to recover on the note is probably limited at best, which would explain why they are suing Chicago Title.

engaged in commercial lending, the Complaint asks that for purposes of the RICO claims they be treated as cheated investors. Even if they were to amend to distinguish their roles as suggested in the opposition, however, it is clear that the overarching scheme as alleged in the Complaint amounted to securities fraud. Their RICO claims would still be subject to the PSLRA bar. *See Bald Eagle*, 189 F.3d at 330.

**Failure to Make Allegations against Chicago Title Insurance Company**

This order has been referring to Chicago Title as a single entity, as the Complaint does. But in fact, it is two entities: Chicago Title Company ("CTC"), a California corporation, and Chicago Title Insurance Company ("CTIC"), a Florida corporation. (Compl., ¶¶ 13–15.)

Chicago Title points out that the Complaint treats both Chicago Title entities as a single unit, without either differentiating between them or alleging facts to show that the separate existence of each one should be disregarded. Its motion appears to accept that CTC is the intended Defendant, but argues that no allegations are made against CTIC.

Plaintiffs summarily allege that the two are "agents, alter egos, and instrumentalities of one another," based on their common ownership, sharing of the same officers, use of the same or interconnected websites, and coordinated operation. (*Id.*, ¶ 16.) Generalized and conclusory allegations of agency or joint venture unsupported by facts are insufficient. *See Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678) (rejecting as insufficient plaintiff's conclusory allegations that defendants were each other's agents and were responsible for each other's acts).

Plaintiffs' opposition to the motion to dismiss makes more robust allegations of a unity between CTC and CTIC. New allegations in opposition to a Rule 12(b)(6) motion to dismiss may be considered when deciding whether to grant leave to
/ / /

amend, but are not considered when ruling on the motion itself. *See Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

While the new allegations are not enough to show that their separate existence should be disregarded, they could suggest CTC and CTIC acted in concert, or that one was part of the other. The Complaint needs to make these allegations, however. The Court or either Defendant should be able to read the Complaint and understand what is being alleged against which Defendant. If the two are to be treated as one, the Complaint must allege facts showing why, and cannot merely conclude that they were each other's agents, alter egos, joint venturers, or the like.

**Continuing Jurisdiction**

The Complaint relies on federal question jurisdiction, based on the two RICO claims, and supplemental jurisdiction as to the state law claims. The parties are not completely diverse. Although this is a putative class action, it does not rely on jurisdiction under the Class Action Fairness Act (CAFA), and it is questionable whether the requirements for CAFA jurisdiction are present here.

With the dismissal of the two federal claims, however, that jurisdictional basis disappears. While the Court's continued exercise of supplemental jurisdiction over state law claims is discretionary under 28 U.S.C. § 1367(c), the Supreme Court has made clear that when federal claims are dismissed before trial, supplemental state law claims should ordinarily be dismissed as well. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (describing this as the rule to be followed in the usual case, even though it is not mandatory).

**Conclusion and Order**

The motion to dismiss (Docket no. 24) is **GRANTED IN PART**. Plaintiffs' two RICO claims are **DISMISSED WITHOUT LEAVE TO AMEND**. Claims against Chicago Title Insurance Company are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim against it.

No later than **21 calendar days from the date this order is issued**, Plaintiffs may amend their motion for leave to amend, updating the proposed complaint to omit RICO claims and to correct pleading defects this order has identified. The amended motion should use the same briefing date and time.

**IT IS SO ORDERED**.

Dated:  September 23, 2020

*Larry A. Burns*
Honorable Larry Alan Burns
Chief United States District Judge